Civil Action No. 12-30085-MAP

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

COMBAT ZONE, INC.

           Plaintiff

V.

DOES 1-84,

           Defendants

Civil Action No. 12-cv-30085-MAP

MOTION TO QUASH OR MODIFY
SUBPOENA TO CHARTER
COMMUNUCATIONS AND
MOTION TO DISMISS

## MOTION TO SQUASH OR MODIFY SUBPOENA AND MOTION TO DISMISS

I was not the direct recipient of the subpoena of this case, but am instead an end user of Charter
Communications, and Internet Service Provider (ISP) which was served the subpoena and notified me via
a separate letter. These subpoenas are used to reveal the personal information of ISP end users whose
Internet Protocol (IP) address is allegedly the source of a copyright infringement of Plaintiff's property.
My ISP states that my IP address has been identified as allegedly belonging to one of the "Does" (a
placeholder name used when a defendant's true identity is unknown.

However, based on a large volume of accounts by previous defendants of copyright infringement
lawyers, such as Steele Hansmeier, the law firm of Ira M. Siegel, K-Beech Inc. and the Law Offices of D.
Gill Sperlein, once the end users are identified, they receive persistent phone calls from the plaintiff's
lawyers, demanding amounts ranging from $3,000 to $12,000 to avoid a lawsuit.

Despite the large volume of demand letters and calls, only a handful of court cases have actually
resulted, with default judgment against the defendants who chose not to participate in the judicial process

being the ultimate result (See *IO GROUP, Inc. v. Does 1-244, case 3:10-cv-03647-MEJ*). Thus the purpose of the subpoenas and indeed the lawsuits is to extract settlement payments from as large a number of end users who have allegedly committed copyright infringement as possible, subjecting innocent and guilty end users alike to the same monetary demands and, significantly, the risk of severe damage to reputation because many of the works are allegedly infringed are adult material.

I did not infringe the copyright work cited by Plaintiff and was not familiar with it until receiving the letter from my ISP. The copyrighted work goes against my moral and religious beliefs. I respectfully request that I be allowed to file this motion without revealing my identifying subscriber information, because many copyright infringement lawyers **selectively** prosecute every "Doe" who attempts to file a motion to quash the subpoena. In fact, at least one such lawyer has stated publically that the intention is to stop other Does from filing motions. This lawyer who filed multiple cases nearly identical to this one, states in a court document that:

> "Plaintiff was voluntarily dismissing movants who were seeking to sever Doe Defendants and suing them individually **in the hopes that by doing so it would cause future Doe Defendants in similar litigations in this District and around the country to stop filing these motions**....Plaintiff has every intention of **Suing every one of the movants that file a motion to sever** and proceeding to trial as necessary." (*Patrick Collins, Inc. v. John Does 1-58, case 3:11-cv-00531-JAG*)

Such a statement implies that every Doe's motion to squash is illegitimate and that only the guilty would want subpoenas quashed, but all defendants have an interest in not being named in a court case having to do with pornography, and being harassed to settle. Indeed innocent defendants have arguably a better reason to file than those guilty: they want to avoid being wrongfully connected to pornographic copyright infringement which could severely damage their good name in their church and their community.

Incidentally, the Plaintiff quoted in the Collins case was asked by Judge John Gibney Jr. to show why they should not be sanctioned for violating Rule 11(b) of the Federal Rules of Civil Procedure on "Representations to the court," for an almost identical case (*K-Beech, Inc., v. John Does 1-85, case 3:11-cv-00469-JA)*.

The Plaintiff in the current case may argue that this motion should be dismissed because it was filed anonymously. But as the example cited makes clear, the reasoning for requesting anonymity for this motion is because I fear this type of selective retaliation by Plaintiff. Indeed, I am concerned about being singled out and made an example of that I will be mailing the motion to the court and Plaintiff from a State other than my own.

By filing this motion anonymously, I draw attention to Plaintiff's tactics in pursuing this and similar copyright infringement cases. Had I filed this motion under true name or IP address, I would almost certainly be singled out by Plaintiff for selective prosecution as the lawyer in the cited case explicitly described. This prosecution would have more to do with using one individual who dared file a motion as an example to other defendants who do not settle with Plaintiff, regardless of guilt, and less to do with the alleged copyright infringement.

**INTRODUCTION**

The nature of these subpoenas and the actions taken by the infringement lawyers indicate a strategy of producing revenue via settlement payments, by subjecting every alleged user to the burden of calls and letters, threat to damage of reputation, and the cost of seeking counsel, ultimately based upon their IP addresses, even though an IP address does not have the culpability of an individual defendant, or even completely isolate a pool of potential defendants, because anyone outside of a household can penetrate a wireless network and infringe materials under that network's IP address.

This point is clearly explained by Judge Paul S. Grewal, ruling on *Discount Video Center, Inc. doing business as Mayhem v. Does 1-5041*:

3

"…the court has serious doubts as to the efficacy of the ISP subpoenas in uncovering the identity of the individuals alleged to have committed infringement…The reason is simple: an IP address exposed by a wireless router might be used by the subscriber paying for the address, but it might not. Roommates, housemates, neighbors, visitors, employees or others less welcome might also use the same address." *(Case 4:11-cv-02694-CW)*

Judge Grewal's observation about the limitation of the IP address should be clear to a layman, and is doubtless well understood by the Plaintiffs in these types of cases. Therefore they use the courts simply as a tool to generate lists of potential copyright infringers, who are then constantly pressured to settle for a dollar amount that appears carefully calibrated to be roughly equivalent to the cost of legal defense, but far less than monetary damages that could be imposed by a court judgment. Thus, for an innocent end user falsely accused based on IP address, the cost of settling appears much less than the cost of a court case, and has the advantage of not revealing their name in public records tied to infringing works that are often pornographic or otherwise seen as deviant in nature, thus carry risk of significant damage to reputation, which could be at best humiliating and at worst socially and professionally devastating to any innocent user.

My argument also echoes the opinion of Judge Gibney, in the similar case of *K-Beech, Inc. v. John Does 1-85 case 3:11-cv-00469-JAG*, and three almost identical cases on Judge Gibney's docket:

"…the plaintiffs sought, and the Court granted expedited discovery allowing the plaintiffs to subpoena information from ISPs to identify the Doe defendants. According to some of the defendants, the plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly with harassing phone calls, demanding $2900 in compensation to end the litigation. When any of the defendants have filed a motion to dismiss or sever themselves from the litigation, however, the plaintiffs have immediately voluntarily dismissed them as parties to prevent the defendants from bringing their motions before the court for

resolution. This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather simply to have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and actual decision on the merits."

Judge Gibney's observation that such lawsuits are aimed at revenue generation via coerced settlements, rather than litigation based on legal merit, is reinforced by further statements by counsel of the plaintiff in the Collins case:

> "Many John Doe defendants are destitute and therefore not worth suing....Several John Does have been public figures who Plaintiff did not [sic] choose to sue." (Patrick Collin, Inc., v. John Does 1-58, case 3:11-cv-00531-JAG)

Had the Plaintiff been pursuing its case with the primary intention of upholding the law and defending its copyright via actual litigation based on merits, it would not cite a guilty party's lack of wealth or guilty party's social influence or political standing as a reason to sue. After all, being poor does not make a defendant less guilty of copyright infringement, but it does reduce the amount of money that can be practically gained via settlement. Likewise , being a "public or political" does not mean a defendant is incapable of infringing on copyrighted material, but it does mean the defense is likely to come in the form of competent attorneys well-versed in the evidentiary liabilities of an IP address.

In a similar case, prior to dismissing the plaintiff's case, the Honorable Judge Beeler of the United States District Court for the Northern District of California made it plain that the "plaintiffs in these cases appear content to force settlements without incurring any of the burdens involved in proving their cases," and that the Plaintiffs have been abusing the court system in order to facilitate their scheme (*Order Dismiss. Comp., Patrick Collins, Inc, v. John Does 1-1,219 Case 4:10-cv-04468-LB, D. Cal. August 29, 2011)*. An honorable judge in the Eastern District of Virginia issued a near identical ruling

5

regarding *Raw Films, Ltd., v. John Does 1-32, No. 3:11-cv-532 (E.D. Va., October 5, 2011)* and required

*Raw Films* and its counsel to show cause why it should not be sanctioned and summarily severed all

defendants and quashed all subpoenas.

## ARGUMENTS

1. **Plaintiff's Subpoena is Improper and Must be Quashed**

2. **Plaintiff has improperly joined 84 individual defendants based on entirely disparate alleged acts**

3. **Undue Burden**

### 1. Plaintiff's Subpoena is Improper and Must Be Quashed

Previous courts have noted that the use of the courts as a means of obtaining subpoenas to issue

settlement letters is well documented as "fishing expeditions". Even when John Doe defendants choose

not to settle, the Plaintiffs in these cases ultimately fail to name defendants and start further court actions.

Many of these types of cases are kept open for as long as possible so the Plaintiffs can obtain as much

settlement money as possible, before they voluntarily dismiss the case and move on to a new one. A

prime example of this can be found in *First Time Videos v. Does 1-500, case 1:10-cv-06524*. The

Plaintiff kept the case open for a year without naming a defendant. The Plaintiffs voluntarily dismissed a

few defendants at a time, presumably because they settled, until November 9, 2011 when the Plaintiffs

dismissed all remaining Doe defendants from the case.

The court should note the very cursory effort Plaintiff has taken to identify the true copyright

infringers. As the IP address assigned to each defendant does not resolve a single culpable individual,

simply targeting the registered owner of the IP is irresponsible. The registered user of the IP address only

identifies the person who pays for the internet access. There are multiple possibilities as to why the

Defendant did not infringe Plaintiff's copyright. Some of the more common scenarios include: home

wireless connection (the source of the IP address) was unsecured or secured with a low level of

6

encryption, resulting in its use by unauthorized persons to commit acts of infringement without knowledge of defendant; or perhaps even more commonly, home wireless connection was secured but password was freely given to household members, and friends and associates of household members, making it possible for numerous persons other than the defendant to commit acts of infringement without the defendant's knowledge. Without significant additional investigative steps, innocent persons will inevitably be implicated in infringement activity and pressured to pay settlement amounts or face a federal lawsuit that not only entails significant legal fees, but also publically exposes their possible involvement in a case about adult material, which in itself could cause significant harm via damage to reputation, professional disgrace, etc.

A Rule 45 subpoena must fall within the scope of proper discovery under Federal Rule of Civil Procedure 26(b)(1), which limits discovery to "any matter, not privileged, that is relevant to the claim or defense of any party in the pending action and is reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). If a subpoena falls outside the scope of permissible discovery, the Court has authority to quash or modify it upon a timely motion by the party served, or a party challenging the relevancy of, or claiming a privacy interest in, the records sought. See Fed. R. Civ. P. 45(c)(3).

This Court, in its Order Granting Plaintiff's Motion for Leave to take Discovery Prior to Rule 26(f) Conference, explicitly recognized Defendants' right to challenge the Subpoena. (See Order Granting Pl.'s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference: "[S]uch notice shall inform the subscribers of their right to challenge the subpoena in this Court"). The Subpoena issued to Charter Communications and attached as Exhibit "A" to this Motion should be quashed pursuant to Rule 26 of the Federal Rules of Civil Procedure because Defendant: (1) challenges the legal sufficiency and legitimacy regarding Plaintiff's request for early discovery that produced the Subpoena, for which Defendant was never given notice or an opportunity to be heard, and (2) claims a privacy interest in the records sought.

## 2. Plaintiff Has Improperly Joined 84 Individual Defendants Based On Entirely Disparate Acts

The Plaintiff's joinder of 84 defendants in this single action is an improper abuse of the judicial system, and creates a real risk of creating unfairness and denies individual justice to those sued. Mass joinder of individuals has been disproved by Federal courts across the country, such as a case in New Jersey (BASEPROTECT UG, LTD., a German Corporation v.Does 1-266,case 2:11-cv-02021-DMC-JAD).

In an almost identical case in which 300 Does were joined, the judge dismissed the case noting:

"[I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap – if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350." (*CP Productions, Inc. v. Does 1-300,case 1:2010cv06255)*

Later, Judge Milton Shadur comments on Steele Hansmeier's abuse of the litigation system "in more than one way" with its "ill-considered" lawsuit:

This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants – this one seeking the nullification of a February 11, 2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's

8

> dismissal of this action, 1 CP's counsel is ordered to appear in court on March 9,
> 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to
> apprise all of the targeted "Doe" defendants that they will not be subject to any
> further trouble or expense as a result of this ill-fated (as well as ill-considered)
> lawsuit.

*CP Productions, Inc. v. Does 1-300 case 1:2010cv06255 (dismissed ALL John Doe defendants)*

In this current case, the real reason for joining the defendants is not because the defendants allegedly engaged in tortious conduct together, but to circumvent having to file separate lawsuits with the required $350.00 filing fee. Had the case been filed properly the Plaintiff would aggregate $29,400 in fees. In actuality, the court can also calculate that if the 84 defendants were (for sake of argument) resided in ten different states and the Plaintiff filed an exact duplicate of this suit in additional districts, the aggregated costs would increase exponentially.

In the State of Illinois, the Honorable Judge Harold A. Baker dismissed an almost identical BitTorrent case (*VPR Internationale v. Does 1-1017, case 2:2011cv02068*) stating in his dismissal:

"Plainly stated, the court is concerned that the expedited *ex parte* discovery is a fishing expedition by means of a perversion of the purpose of and intent of *Fed. R. Civ. P. 23*."

In another nearly identical case, Judge Samuel Conti from the Northern District of California issued a similar order, citing the same joinder problems, and wrote in his decision, "this court does not issue fishing licenses." (*Millennium TGA, Inc.v. Does 1-21, case 3:2011cv02258*)

In another near identical case in the Northern District of California, Judge Bernard Zimmerman recently (6 Sep 2011) dismissed over 5,000 John Does due to improper joinder. (*On The Cheap, LLC, v. Does 1-5011, case C10-4472 BZ)* Judge Zimmerman stated the following in his ruling:

9

> "This Court does not condone copyright infringement and encourages settlement
> of genuine disputes.  However, Plaintiff's desire to enforce its copyright in what
> it asserts is a cost-effective manner does not justify perverting the joinder rules to
> first create the management and logistical problems discussed above and then to
> offer to settle with Doe defendants so they can avoid digging themselves out of
> the morass plaintiff is creating."

   The Plaintiff argues in this case that Does 1-84 have been properly joined pursuant to
Fed.R.Civ.P. 20 (a)(2) because the defendants traded (uploaded and downloaded the same file of
copyrighted work through BitTorrent software.  Joinder based on separate but similar behavior
by individuals allegedly using the Internet to commit copyright infringement has been rejected
by courts across the country.  In *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008
WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight
defendants where each defendant used the same ISP as well as some of the same peer-to-peer
("P2P") networks to commit the exact same violation of the law in exactly the same way.  The
court explained: "[M]erely committing the same type of violation in the same way does not link
defendants together for purposes of joinder."  *LaFace Records*, 2008 WL 544992, at \*2.  In *BMG
Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at \*5-6 (N.D. Cal.
July 31, 2006), the court *sua sponte* severed multiple defendants in action where the only
connection between them was allegation they used same ISP to conduct copyright infringement.
See also *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS
27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended *sua sponte* severance of multiple
defendants in action where only connection between them was allegation they used same ISP and
P2P network to conduct copyright infringement); *BMG Music v. Does 1-203*, No. Civ.A. 04-650,

2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, *In re Cases Filed by Recording Companies*, filed in *Fonovisa, Inc. et al. v. Does 1-41* (No. A-04-CA-550 LY), *Atlantic Recording Corporation, et al. v. Does 1-151* (No. A-04-CA-636 SS), *Elektra Entertainment Group, Inc. et al. v. Does 1-11* (No. A-04-CA-703 LY); and *UMG Recordings, Inc., et al. v. Does 1-51* (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

Plaintiff may argue that, unlike the RIAA cases, its allegations here are based upon use of the Internet to infringe a single work with a "unique" hash mark. While that accurately describes the facts alleged in this case, it does not change the legal analysis. Whether the alleged infringement concerns a single copyrighted work or many, it was committed by unrelated defendants, at different times and locations, sometimes using different services, and perhaps subject to different defenses. That attenuated relationship is not sufficient for joinder. See BMG Music v. Does 1-203, 2004 WL 953888, at *1.

Nor does the analysis change because the BitTorrent protocol works by taking small fragments of a work from multiple people in order to assemble a copy. Nearly all of the older protocols in the aforementioned cases work in this fashion. Kazaa, eDonkey and various Gnutella clients (e.g., LimeWire) have incorporated multisource/swarming downloads since

2002.

Recently (18 Apr, 2012), in an almost identical case, Judge Roger W. Titus of the United States District Court of Maryland dismissed the plaintiff's case because the plaintiff's argument failed to satisfy the requirements in Fed.R.Civ.P. 20 (a)(2). In his ruling Judge Titus states:

"The principal question is whether uploading or downloading pieces of the exact same digital copy of a work through the Bit Torrent program means that Defendants' actions are transactionally-related for the purposes of Rule 20(a)(2)....The Plaintiff's fundamental problem is that the transactions of each Defendant Doe are not related to one another. Plaintiff has only alleged that "Defendants in this case engaged in a series of related transactions, because they all downloaded the exact same file (not just the same copyrighted work) within a limited period of time." …[I]ndeed, the better reasoned decisions have held that where a plaintiff has not plead that any defendant shared file pieces directly with one another, the first prong of the permissive joinder is not satisfied.

Judge Titus also cites:

"CineTel Films, Inc., 2012 WL 1142272 at *7; See Hard Drive Prods., 809 F. Supp.2d at 1161, 1163 (stating that Rule 20 joinder was improper because "the only commonality between the copyright infringers of the same work is that each commit[ted] the exact same violation of the law in exactly the same way" and that "merely infringing the same copyrighted work over [a given time] period is not enough [to support joinder]" and "even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses acted in concert with all the others." ) *(Third Degree Film, Inc. v. Does 1-85, case RWT 12cv23)*

Civil Action No. 12-30085-MAP

### 3. Undue Burden

Pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv) a subpoena shall be quashed or burden. Doe asserts being subject to an undue burden in being a target of this civil action, when there is a substantial likelihood that the plaintiff will be unable to establish that Doe was actually the person responsible for any files transferred at the times alleged, or that Doe copied, distributed, or otherwise infringed on a protected work owned by the plaintiff. Furthermore, the removal of Doe's cloak of anonymity will subject him to intrusive public scorn as an alleged unlawful copier of pornography

W HEREFORE, Defendant John Doe respectfully prays the Court GRANTS Defendant's M otion to Quash Plaintiff s Subpoena to Charter Communications. Finally, Defendant respectfully prays the Court to grant Defendant such other relief as is just and equitable under the facts and circumstances of this cause.

Dated: June 12, 2011                                    Respectfully Submitted,

John Doe

Pro Se

In accordance to Local Rule 5.2

13

Civil Action No. 12-30085-MAP

## **Certificate of Service**

I HEREBY CERTIFY that on this day of June 11, 2012, a true and correct copy the foregoing

document was sent via US Mail to:

Marvin Cable
Law Offices of Marvin Cable
73 Bridge Street, Suite # 6
Northhampton, MA 01606

Law Offices of Marvin Cable c/o BRS
100 Chesterfield Business Parkway, 2nd Floor
Saint Louis, MO 630055
(Electronic Fax)

Charter Communications, Inc. (Interested Subpoenaed Party)
Legal Department
12405 Powerscourt Dr.
St. Louis, MO 63131