Civil Action No. 12-30085-MAP

2012 JUN 20 A 11: 42
FILED IN CLERKS OFFICE
U.S. DISTRICT COURT
DISTRICT OF MASS.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

COMBAT ZONE, INC.

          Plaintiff

  V.

DOES 1-84,

          Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 12-30085-MAP

MOTION TO QUASH OR MODIFY SUBPOENA TO CHARTER

COMMUNUCATIONS AND MOTION TO DISMISS

**JOHN DOE 1-84 OMNIBUS MOTION TO SEVER AND/OR QUASH THE SUBPOENA AND/OR ISSUE A PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW**

Defendant, John Doe, files this Omnibus Motion and moves this Court to: (first) sever

and dismiss the Defendants for improper joinder, and require that Plaintiff re-file the severed

cases, if it chooses to do so, pursuant to Federal Rule of Civil Procedure 21; and/or (second)

quash the subpoena directed at Charter Communications and/or issue a protective order limiting

the disclosures by Charter Communications pending further review and argument pursuant to

Federal Rules of Civil Procedure 26 and 45. This Court should grant the relief requested.

In support, the Defendant relies on the following Memorandum of Law:

### I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff, Combat Zone, Inc., is a California corporation and professes to have its

principal places of business in California. (Complaint ¶ 6.) Plaintiff neither alleges nor appears

to transact business in Massachusetts or have any identifiable connections to Massachusetts.

Plaintiff claims to be the copyright holder of the explicit adult video production titled *Teen

Babysitters #3*. (Compl. ¶ 8.)

Civil Action No. 12-30085-MAP

Plaintiff alleges that each of the 84 John Doe Defendants is liable for the infringement of and contributory infringement of Plaintiff's copyright in *Teenage Babysitters #3*. (*See general* Compl.)

Plaintiff claims that personal jurisdiction each of the Defendants is proper:

> [B]ecause each Defendant, without consent or permission of Plaintiff as the exclusive rights owner, intentionally and willfully distributed, and offered to distribute over the Internet, copyrighted works for which the Plaintiff has exclusive rights. In addition, each Defendant contracted with an Internet Service Provider (ISP) found in this District to provide each Defendant with access to the Internet.

(Compl. ¶ 3 (citing 28 U.S.C. §§ 1391(b), 1400(a)).) Plaintiff further claims that "venue in this District is proper . . . [because] each Defendant may be found in this District and/or a substantial part of the alleged events occurred and/or have a significant effect within this District." (Compl. ¶ 2 (citing 28 U.S.C. §§ 1391(b), 1400(a)).)

Plaintiff has also issued an unknown number of subpoenas seeking information about the identities of the Defendants, including a subpoena *duces tecum* to the ISP Charter Communications seeking information regarding the identity of Doe(s) in question. (*See* **Exhibit A** which is incorporated herein at if set forth verbatim herein).

## II. ARGUMENT

Plaintiff is improperly utilizing this Court's procedures to extort settlements from potentially innocent individuals. Plaintiff, and other mass-copyright plaintiffs, harass potentially innocent individuals with threats of statutory damages and legal fees and embarrass them by naming them as defendants in actions for copyright infringement of explicit pornographic videos. Courts addressing these pornographic movie infringement cases have expressed concern about such abusive settlement tactics. See e.g., *On the Cheap, LLC v. Does 1-5011*, No. 10-4472-

Civil Action No. 12-30085-MAP

BZ, 2011 WL 4018258, at *11 (N.D. Cal. Sept. 6, 2011) (stating that settlement tactics result in the defendants being left with a "decision to either accept plaintiff's demand or incur significant expense to defend themselves" and such does not "comport with the principles of fundamental fairness'"").

Specifically, Plaintiff has misjoinded 84 unrelated Defendants and has caused the issuance of a Subpoena prior to the rule 26(f) conference seeking protected information as to Defendants' identity and anonymous online activities. Also, this Court should sever and dismiss the Defendants for improper joinder, and require that Plaintiff re-file the severed cases, if it chooses to do so, pursuant to Federal Rule of Civil Procedure 21. In the alternative, this Court should quash the subpoena directed at Charter Communications and/or issue a protective order limiting the disclosures by Comcast Communications pending further review and argument pursuant to Federal Rules of Civil Procedure 26 and 45.

## A. Plaintiff's Joinder of 84 Unrelated Defendants in this Action is Improper

In its Complaint, Plaintiff improperly joined 84 unrelated individuals as Defendants to this lawsuit. Federal Rule of Civil Procedure 20(a)(2) provides, in relevant part, that defendants may only be joined in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

"[T]he central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes thereby eliminating unnecessary lawsuits." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000). "Under the Rules, the impulse is toward entertaining the broadest

Civil Action No. 12-30085-MAP

possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 866 86, S.Ct. 1130, 16 L.Ed.2d 218 (1966). "The Federal Rules, however, also recognize countervailing considerations to judicial economy." *Alexander*, 207 F.3d at 1324. A motion for joinder may be denied if it would result in "prejudice, expense or delay." 7 Charles Alan Wright, et. al., Federal Practice and Procedure § 1652, at 396 (3d ed. 2001). "The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices." *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002).

Numerous courts have found that alleged copyright infringement through the use of BitTorrent Protocol is insufficient to sustain permissive joinder, both in the Eleventh Circuit[1] and beyond.[2]

### 1. Plaintiff's Claims Do Not Arise Out of "the Same Transaction, Occurrence, or Series of Transactions or Occurrences"

Plaintiff would like this Court to believe that the mere use of BitTorrent Protocol by the individual Defendants is sufficient to sustain their joinder in this action. However, an individual Defendant's alleged use of BitTorrent Protocol does not necessitate the inference that he or she had any interaction with any of the other 84 Defendants in this case. As was noted in an analogous case recently decided in the Southern District of Florida:

---

[1] See *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939, slip op., 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011) (order severing defendants); *Patrick Collins, Inc. v. Does 1-35*, No. 1:11-CV-02940 (N.D. Ga. Dec. 19, 2011) (order severing defendants); *K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-2941-CAP (N.D. Ga. Dec. 5, 2011) (order severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, ---F.R.D.---, No. 1:11-CV-21567-KMM, 2011 WL 5190106 (S.D. Fla. Nov. 1, 2011) (severing defendants); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, ---F.D.R.---, No. 1:11-CV-21525-KMM, 2011 WL 5190048 (S.D. Fla. Nov. 1, 2011) (severing defendants).

[2] See e.g., *Third Degree Films v. Does 1-3577*, No. C11-02768 LB, slip op., 2011 WL 5374569 (N.D. Cal. Nov. 4, 2011); *Hard Drive Productions, Inc. v. Does 1-30*, No. 2:11-CV-345, slip op., 2011 WL 4915551 (E.D. Va. Oct. 17, 2011) (severing defendants); *K-Beech, Inc. v. Does 1-78*, No. 5:11-CV-05060 (E.D. Penn. Oct. 3, 2011) (order severing defendants).

Civil Action No. 12-30085-MAP

> Under the BitTorrent Protocol, it is not necessary that each of the
> Does . . . participated in or contributed to the downloading of each
> Other's copies of the work at issue – or even participated in or
> contributed to the downloading by any of the [other] Does . . . .
> Any "pieces" of the work copied or uploaded by any individual
> Doe may have gone to any other Doe or to any of the potentially
> thousands who participated in a given swarm. The bare fact that a
> Doe clicked on a command to participate in the BitTorrent
> Protocol does not mean that they were part of the downloading by
> unknown hundreds or thousands of individuals across the country
> or across the world.

*Liberty Media Holdings, LLC v. BitTorrent Swarm*, ---F.R.D.---, No. 1:11-CV-21567-KMM,

2011 WL 5190106, at *2 (S.D. Fla. Nov. 1, 2011) (quoting *Hard Drive Prods., Inc. v. Does 1-*

*188*, ---F.Supp.2d.---, No. C-11-01566, 2011 WL 3740473, at *13 (N.D. Cal. Aug. 23, 2011)).

District courts across the nation have reasoned that John Doe defendants in analogous

lawsuits were improperly joined based the large time span between each defendant's alleged

sharing of the file. *Raw Films, Inc. v. Does 1-32*, No. 1:11-CV-2939-TWT,

slip. op., 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (time span of more than 4 months);

*K-Beech, Inc. v. Does 1-63*, No. 1:11-CV-02941-CAP, at 6 (N.D. Ga. Dec. 5, 2011) (time span

of almost 3 months); *Liberty Media Holdings, LLC*, 2011 WL 5190106, at *3 (S.D. Fla. Nov. 1,

2011) (time span of 2 months); *Liberty Media Holdings, LLC v. BitTorrent Swarm*,---F.R.D.---,

No. 1:11-CV-21525-KMM, 2011 WL 5190048, at *2-4 (S.D. Fla. Nov. 1, 2011) (time span of

two months); *Hard Drive Prods., Inc.*, 2011 WL 3740473, at *13 (time span of two weeks).

In *Raw Films, Inc.*, the court found that "[d]ownloading a work as part of a swarm does

not constitute "acting in concert" with one another, particularly when the transactions happen

over a long period." 2011 WL 6840590, at *2; *see also K-Beech, Inc.*, No. 1:11-CV-02941-CAP,

at 4 (N.D. Ga. Dec. 5, 2011) (order granting motion to sever). In explanation of that finding, the

court reasoned that:

Civil Action No. 12-30085-MAP

> [t]he differing dates and times of each Defendant's alleged sharing
> do not allow for an inference that the Defendants were acting in
> concert. While the Defendants may have used the same peer-to-
> peer system, the Complaint does not allege that they were sharing
> with each other. For example, Doe 4, who is alleged to have been
> in the swarm on July 13, 2011, is unlikely to have been in the
> swarm at the same time as Doe 5, who is alleged to have been in
> the swarm on March 4, 2011.

*Id.* at *2; *see also K-Beech, Inc.*, No. 1:11-CV-02941-CAP, at 5-6 (N.D. Ga. Dec. 5, 2011).

In this case, Plaintiff's Complaint hollowly alleges that Defendants' alleged infringement was

part of the same series of transactions or occurrences. (Compl. ¶ 11.) However, Exhibit A

of the Complaint shows that these transactions or occurrences happened throughout a **time span**

**of more than 10 weeks.** (*See* Compl. Ex. A.) Rather than admit that Defendants were not using

BitTorrent Protocol at the same, or even similar, times, Plaintiff instead focuses on its allegation

that the Defendants were sharing the same piece (as denoted by hash tag) of its copyrighted

work. (*See* Compl. ¶¶ 5, 11, 13, 20, 31.) However, this allegation does not warrant the

implication that Defendants exchanged any piece of the relevant file with each other or actually

acted in concert with one another. *See e.g., MCGIP, LLC v. Does 1-149*, No. C 11-02331 LB,

slip op., 2011 WL 4352110, at *3 (N.D. Cal. Sept. 16, 2011) (finding misjoinder where the

plaintiff failed to show that any of the defendants actually exchanged any piece of the seed file

with one another); *Boy Racer, Inc. v. Does 1-60*, No. C 11-01738 SI, slip op., 2011 WL 3652521,

at *4 (N.D. Cal. Aug. 19, 2011) (finding misjoinder because "Plaintiff [did] not plead facts

showing that any particular defendant illegally shared plaintiff's work with any other particular

defendant"). Plaintiff's allegations that Defendants committed the same type of violation in the

same way simply does not equate to participation in the same transaction, occurrence, or series

of transaction or occurrence. *See LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR,

Civil Action No. 12-30085-MAP

2008 WL 544992, at *7 (E.D.N.C. Feb. 27, 2008). This basis alone is sufficient to warrant the

severance of the Defendants.

### 2. Joinder Will Prejudice the Defendants Moving Forward and Result in a Lack of Judicial Economy

"Among the factors to be considered by the court in exercising its discretion under Rule

21 are whether . . . judicial economy would be facilitated, whether prejudice would be avoided if

severance were granted, and whether different witnesses and documentary proof are required for

the separate claims." *Hartley v. Clark*, No. 3:09cv559/RV/EMT, 2010 WL 1187880, at *4 (N.D.

Fla. Feb. 12, 2010); *see also*, 7 Charles Alan Wright, et al., Federal Practice and Procedure §

1652, at 396 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the

addition of the party under Rule 20 will not foster the objective of the rule, but will result in

prejudice, expense or delay").

Joinder of 84 unrelated Defendants in this case will result in severe practical problems

moving forward. The Defendants, proceeding both *pro se* and through counsel, will likely assert

different legal and factual defenses that apply to them particularly, or only a fraction of the 84

defendants. Based on an individual Defendant"s circumstances, he or she may be asserting legal

defenses based on: copyright invalidity, de minimums copying, fair use, grant of permission or a

license, copyright misuse, acquiescence, unclean hands, and/or estoppel. Further, the individual

Defendants are likely to put forward a variety of factual defenses and will identify different

witnesses. As one court noted in a similar case:

> Comcast subscriber John Doe 1 could be an innocent parent whose
> internet access was abused by her minor child, while John Doe 2
> might share a computer with a roommate who infringed Plaintiffs"
> works. . . . Wholesale litigation of these claims is inappropriate, at
> least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203*, No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

Civil Action No. 12-30085-MAP

As the case proceeds, Plaintiff is likely to make further discovery requests against each

individual Defendant that will further increase complexity and cost. This is the exact situation in

which the Northern District of California found itself when it failed to sever the 52 defendants in

a similar case:

> [Plaintiff] would require nothing less than an inspection of the
> subscriber"s electronically stored information and tangible things,
> including each of the subscriber"s computer and computers of
> those sharing his internet network. . . . Presumably, every desktop,
> laptop, smartphone, and tablet in the subscriber"s residence, and
> perhaps any residence of any neighbor, houseguest or other sharing
> his internet access, would be fair game. Beyond such an
> inspection, [Plaintiff] might require still more discovery, including
> interrogatories, document requests and even depositions.

*Boy Racer, Inc. v. Does 1-52*, No. 11-CV-2329-PSG, at 4 (N.D. Cal. Sept. 13, 2011) (order
denying further discovery).

The courthouse circus which will likely ensue if the Defendants are not severed will

result in inefficiency for the Court and prejudice the Defendants moving forward. *See, e.g., Pac.*

*Century Int'l Ltd. v. Does 1-101*, No. C-11-02533-(DMR), 2011 WL 5117424, at *3 (N.D. Cal.

Oct. 27, 2011) ("An internet based copyright infringement case with at least 101 defendants

would prove a *logistical nightmare*." (emphasis added)); *Bridgeport Music, Inc. v. 11C Music,*

202 F.R.D. 229, 233 (M.D. Tenn. 2001) ("If joined in one action, hundreds of Defendants will be

subject to an overwhelming onslaught of materials and information unrelated to the specific

claims against them – all of which they must pay their attorneys to review."). To prevent

prejudicing the Defendants and maximize judicial economy, this should sever the individual as

and dismiss the Defendants from this case.

## B. Plaintiff's Subpoena is Improper and Must be Quashed

A Rule 45 subpoena must fall within the scope of proper discovery under Federal Rule of

Civil Action No. 12-30085-MAP

Civil Procedure 26(b)(1), which limits discovery to "any matter, not privileged, that is relevant to the claim or defense of any party in the pending action and is reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). If a subpoena falls outside the scope of permissible discovery, the Court has authority to quash or modify it upon a timely motion by the party served, or a party challenging the relevancy of, or claiming a privacy interest in, the records sought. *See* Fed. R. Civ. P. 45(c)(3).

This Court, in its Order Granting Plaintiff's Motion for Leave to take Discovery Prior to Rule 26(f) Conference, explicitly recognized Defendants" right to challenge the Subpoena. (*See* Order Granting Pl."s Mot. for Leave to Take Disc. Prior to Rule 26(f) Conference: "[S]uch notice shall inform the subscribers of their right to challenge the subpoena in this Court"). The Subpoena issued to Comcast and attached as Exhibit "A" to this Motion should be quashed pursuant to Rule 26 of the Federal Rules of Civil Procedure because Defendant: (1) challenges the legal sufficiency and legitimacy regarding Plaintiff's request for early discovery that produced the Subpoena, for which Defendant was never given notice or an opportunity to be heard, and (2) claims a privacy interest in the records sought.

### 1. Defendant Objects to the Early Discovery that Plaintiff Seeks Through its Subpoena

Discovery is normally barred prior to the Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation or by court order."). Courts apply this rule even when considering subpoenas issued to non-parties. *See Crutcher v. Fidelity Nat'l Ins. Co.*, Civ. No. 06-5273, 2007 WL 430655, *2 (E.D. La. Feb. 5, 2007).

Civil Action No. 12-30085-MAP

Plaintiff has misled this Court by suggesting that it will be able to identify the Defendants

through issuance of subpoenas to Charter Communications and other ISPs. (Compl. ¶¶ 5, 7.)

This suggestion is inaccurate.

An IP address can only identify a subscriber to an ISP; it does not identify the specific

identity of the person that actually engaged in the alleged infringing activities. To successfully

identify the claimed infringers, Plaintiff would need extensive additional information that cannot

be gleaned from information requested by the Subpoena. Indeed, Plaintiff's inaccurate portrayal

of the facts required to identify infringers was exposed in a similar lawsuit in September, 2011.

*Boy Racer, Inc. v. Does 1-52*, No. 11-CV-2329-PSG (N.D. Cal. Sept. 13, 2011) (order denying

further discovery; order to show cause).

In that case, after issuing a substantially identical subpoena and representing to the court

that each IP address corresponded to a defendant, the plaintiff was forced to admit that the

subscriber information linked to an IP number was legally insufficient to identify a defendant

and really just the starting point for a far more invasive investigation. In rejecting that plaintiff's

attempt to expand its discovery beyond its initial representations, the court quoted the key

admissions to the plaintiff's argument as follows:

> While Plaintiff has the identifying information of the subscriber,
> this does not tell Plaintiff who illegally downloaded Plaintiff's
> works, or, therefore, who Plaintiff will name as the Defendant in
> this case. It could be the Subscriber, or another member of his
> household, or any number of other individual who had direct
> access to Subscribers network.
>
> [Accordingly:]
>
> Plaintiff plans to request a limited inspection of Subscriber's
> electronically stored information and tangible things, such as
> Subscriber's computer and the computers of those sharing his

10

Civil Action No. 12-30085-MAP

> Internet network, for the purpose of finding the individual that
> unlawfully violated Plaintiff's copyrighted works by
> uploading/downloading the file referenced BitTorrent, or to see
> whether such information has since been erased contrary to
> instructions by Verizon Online and Plaintiff's attorneys.

*Id.* at 4 (withdrawing its prior order granting limited early discovery and denying further

discovery requests because "[p]resumably, every desktop, laptop, smartphone, and tablet in the

subscriber's residence, and perhaps any residence of any neighbor, houseguest or other sharing

his internet access, would be fair game") (internal quotes and citations omitted).

In *VPR Int'l v. Does 1-1017*, the court came to a similar conclusion and denied the

Plaintiff's motion for expedited discovery. *VPR, Int'l*, 2:11-CV-02068-HAB-DGB (C.D. Ill.

April 29, 2011). The court noted that subscriber information requested from an ISP would be

insufficient to identify an infringer who "might be the subscriber, someone in the subscriber's

household, a visitor with her laptop, a neighbor, or someone parked on the street at any given

moment." *Id.* at 2. To illustrate this fact, the court noted an instance involving a raid by federal

agents on a home that was linked to downloaded child pornography.

> The identity and location of the subscriber were provided by the
> ISP. The desktop computer, iPhones, and iPads of the homeowner
> and his wife were seized in the raid. Federal agents returned the
> equipment after determining that no one at the home had
> downloaded the illegal material. Agents eventually traced the
> downloads to a neighbor who had used multiple IP subscribers"
> Wi-Fi connections (including a secure connection form the State
> University of New York).

*Id.* at 2 (citing Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks*

(April 25, 2011),

http://www.msnbc.msn.com/id/42740201/ns/technology_and_sciencewireless/).

The court opined as to the plaintiff's true motives. *Id.* at 3 ("Could expedited

discovery be used to wrest quick settlements, even from people who have done nothing wrong?

11

Civil Action No. 12-30085-MAP

The embarrassment of public exposure might be too great, the legal system too daunting and

expensive, for some to ask whether VPR has competent evidence to prove its case.").

## 2. The Subpoena Issued by Plaintiff Seeks to Discover Protected Information and Violates the United States Constitution

The essence of the discovery sought through the subpoena at issue in this case is the

identity of individuals engaged in anonymous online communication.[3] Accordingly, the First

Amendment applies and Plaintiff must demonstrate its legitimate need for the information before

being able to overcome the right to engage in anonymous speech. *Sinclair v. TubeSockTedD*, 596

F.Supp. 2d 128, 131 (D.D.C., 2009); *see generally Reno v. American Civil Liberties Union*, 521

U.S. 844, 870 (1997); *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 341-43 (1995). As

noted in *Sinclair*, individuals engaged in anonymous online communication may be identified

only if Plaintiff meets a multi-factor test designated to balance the right to seek redress for

legitimate claims against the fundamental right to communicate anonymously. 596 F.Supp. 2d at

132. In particular, Plaintiff must come forward with prima facie evidence that each particular

Defendant infringed the Plaintiff's rights before that Defendant's identity is disclosed. *Id.* Here,

Plaintiff fails to address the First Amendment constitutional issues raided by Plaintiff's attack on

the Defendants anonymous speech, and has even failed to create a prima facie

record to support its allegations that Doe 85, or any of the Defendants, engaged in or contributed

to copyright infringement.

The only factual support that Plaintiff provides for the allegations in the Complaint are a

---

[3] Additionally, Defendant maintains a privacy interest in his or her identifying information on file with Comcast, and claims that it is protected information in and of itself. *See Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590-91 (D. Kan. 2003) (As bank customer, defendant had a personal right with respect to its bank account records at banks which were subject of subpoenas duces tecum issued by plaintiff, and that right gave defendant standing to move to quash the subpoenas); *Broadcort Capital Corp. v. Flagler Securities, Inc.*, 149 F.R.D. 626 (Nonparty and defendant in securities action had standing to object to subpoena duces tecum of telephone company records based on claim that records were privileged, despite contention that only the served party could object).

Civil Action No. 12-30085-MAP

list of IP addresses from which it is alleged infringing activity took place, supplied by Copyright

Enforcement Group, LLC ("CEG") and the Declaration of John Nicolini, CEG"s Vice President,

attesting to the highly technical computer-based applications and methodology which he claims

identify the Defendants as alleged infringers. However, this Court must heavily discount, if not

dismiss, any evidentiary support these items may lend to Plaintiff"s Complaint upon information

and belief CEG is actually an interested party in this litigation, rather than an independent

witness as Plaintiff would have this court believe.

It is widely accepted that "it is improper for an expert to be compensated on a contingent

fee basis." Michael H. Graham, 5 Handbook of Fed. Evid. § 702:3 (7th ed.); *see Person v.*

*Ass'n*

*of the Bar of the City of New York*, 554 F.2d 534 (2d Cir. 1977); *Swafford v. Harris*, 967 S.W. 2d

319 (Tenn. 1988); *Dupree v. Malpractice Research, Inc.*, 445 N.W. 2d 498 (Mich. 1989); *Polo v.*

*Gotchel*, 542 A.2d 947 (N.J. 1987). "An agreement to give an opinion on a contingent basis,

particularly on an arithmetical scale, attacks the very core of expert testimony." *Gediman v.*

*Sears, Roebuck & Co.*, 484 F.Supp. 1244, 1248 (D. Mass. 1980). Such an agreement is classified

by Williston on Contracts, 3d ed. 1972, Section 1716 under "Bargains Obstructing Justice." *See*

*also,* Restatement of the Law, Contracts, 1932 § 552(2).

While acknowledging that Plaintiff is a client of CEG, neither Plaintiff nor Declarant

Nicolini ever specifies to the court how CEG, and thus the Declarant, were compensated. A brief

review of CEG's website reveals that their services are offered "at no cost to content owners."

Copyright Enforcement Group, Monetization, http://www.cegintl.com/monetization.html

[Attached hereto as Exhibit B and incorporated by reference herein as if set forth verbatim

herein]; *also* Press Release, Copyright Enforcement Group, New Anti-

13

Civil Action No. 12-30085-MAP

Piracy Solutions and Business Intelligence Services Launched by Copyright Enforcement Group

(CGE) (Jan. 11, 2012), http://www.prweb.com/releases/2012/1/prweb9087878.htm ("available at

no cost to content owners") [Attached hereto as Exhibit C and incorporated by reference herein

as if set forth verbatim herein]. The only reasonable explanation for this "no cost" service is that

CEG is being compensated from a percentage of the settlements and/or judgments resulting from

this litigation.

The opacity of how Plaintiff and Declarant treat this issue is particularly alarming. As

one court noted: "[t]he concealment of a contingent financial arrangement with a witness would

be unconscionable. With the disclosure of such an arrangement, an opinion proffered by an

expert would likely be so undermined as to be deprived of any substantial value." *Creative*

*Dimensions in Mgmt., Inc. v. Thomas Group, Inc.*, No. CIV. A. 96-6318, 1999 WL 135155, at *2

(E.D. Pa. Mar. 11, 1999).


Declarant's undisclosed financial interest in this litigation is likely one of the reasons that

the Declaration did not address the error rate of the software used to identify Defendants, and

erroneously concluded that Defendants, as ISP subscribers, were the individuals involved in

copyright infringement activity.

The Declaration would have this Court believe that CEG"s highly technical methods used

to identify IP addresses from which allegedly infringing activity took place are highly accurate,

but recent studies have shown that similar software produces a large number of false positives.

A recent study performed by the Department of Computer Science and Engineering at the

University of Washington determined that "copyright holders utilize inconclusive methods for

identifying infringing BitTorrent users. [The Researchers] were able to generate hundreds of

Civil Action No. 12-30085-MAP

DMCA takedown notices for machines under [their] control at the University of Washington that

were not downloading or sharing any content." Michael Piatek et al., *Challenges and Directions*

*for Monitoring P2P File Sharing Networks —or— Why My Printer Received a DMCA Takedown*

*Notice*, 3rd USENIX Workshop on Hot Topics in Security 2008, (July 29, 2008)

http://www.usenix.org/event/hotsec08/tech/full_papers/piatek/piatek.pdf. Specifically, the

article concludes:

> [W]e find that it is possible for a malicious user (or buggy
> software) to implicate (frame) seemingly any network endpoint in
> the sharing of copyrighted materials. We have applied these
> techniques to frame networked printers, a wireless (non-NAT)
> access point, and an innocent desktop computer, all of which have
> since received DMCA takedown notices but none of which
> actually participated in any P2P networks.
>
> *Id.*

Also, and as noted above, the Declaration makes no accounting for actions

engaged in by third parties using Defendants" networks. As one court noted in a

similar case:

> Comcast subscriber John Doe 1 could be an innocent parent whose
> internet access was abused by her minor child, while John Doe 2
> might share a computer with a roommate who infringed Plaintiffs"
> works. . . . Wholesale litigation of these claims is inappropriate, at
> least with respect to a vast majority (if not all) Defendants.

*BMG Music v. Does 1-203*, No. Civ. A 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

The undisclosed nature of CEG"s compensation and the likelihood that it is in some way

contingent upon this litigation strongly violates public policy and renders the Declaration and

other evidentiary support produced by CEG so necessarily flawed that they cannot not assist this

Court in determining the facts of this case. Plaintiff is attempting to obtain Defendant"s

Constitutionally protected information without even being able to create a prima facie record to

Civil Action No. 12-30085-MAP

support its allegations that Doe 85, or any of the Defendants, engaged in or contributed to

copyright infringement. As such, the Subpoena should be quashed.

## III. CONCLUSION

Plaintiff has demonstrated that it is far more interested in obtaining Defendants" contact

information for use in extracting large settlements than the formalities of the legal process and

privacy interest of the affected individuals. Plaintiff has repeatedly misled the court in its

representations supporting joinder of the Defendants and obtaining early discovery. CEG and

the Declarant Nicolini's undisclosed financial interest in this litigation destroy any credibility of

the Declaration and other factual support produced by Nicolini and CEG. Plaintiff's joinder of

Defendants is improper because Plaintiff's claims do not arise out of the same transaction,

occurrence, or series thereof, and it prejudices the Defendant while undermining judicial

economy. Plaintiff's Subpoena should be quashed because Plaintiff misled this Court in

obtaining an Order granting early discovery, seeks protected information, and violates the United

States Constitution.

WHEREFORE, premises, considered, Does respectfully requests that this Court:

(a) Sever and dismiss all Defendants pursuant to Federal Rule of Civil Procedure 21 and

require Plaintiff to bring individual actions against each Defendant, if it chooses to do

so, in the appropriate venue;

(b) Quash the Subpoena pursuant to Federal Rule of Civil Procedure 26;

(c) Enter a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure,

staying all discovery in this case (and the use of any information already obtained by

the Plaintiffs in discovery) until such time as the interests of Doe 1-84 can be heard and

considered by a court of proper jurisdiction;

Civil Action No. 12-30085-MAP

(d) Grant such other and further relief to which Doe 85 may justly be entitled.

Respectfully Subitted,                                    John Doe
June 19, 2012                                             Pro se

                                                         *John Doe*

## Certificate of Service

I HEREBY CERTIFY that on this day of June 11, 2012, a true and correct copy the foregoing

document was sent via US Mail to:

        Marvin Cable
        Law Offices of Marvin Cable
        73 Bridge Street, Suite # 6
        Northhampton, MA 01606


        Law Offices of Marvin Cable c/o BRS
        100 Chesterfield Business Parkway, 2nd Floor
        Saint Louis, MO 63005


        Charter Communications, Inc. (Interested Subpoenaed Party)
        Legal Department
        12405 Powerscourt Dr.
        St. Louis, MO 63131

Civil Action No. 12-30085-MAP

(d) Grant such other and further relief to which Does 1-84 may justly be entitled.


Respectfully Subitted,                                    John Doe
June 19, 2012                                             Pro se



## Certificate of Service

I HEREBY CERTIFY that on this day of June 19, 2012, a true and correct copy the foregoing

document was sent via US Mail to:

    Marvin Cable
    Law Offices of Marvin Cable
    73 Bridge Street, Suite # 6
    Northhampton, MA 01606


    Law Offices of Marvin Cable c/o BRS
    100 Chesterfield Business Parkway, 2nd Floor
    Saint Louis, MO 63005


    Charter Communications, Inc. (Interested Subpoenaed Party)
    Legal Department
    12405 Powerscourt Dr.
    St. Louis, MO 63131

Civil Action No. 12-30085-MAP

support its allegations that Does 1-84, engaged in or contributed to copyright infringement. As such, the Subpoena should be quashed.

## III. CONCLUSION

Plaintiff has demonstrated that it is far more interested in obtaining Defendants" contact information for use in extracting large settlements than the formalities of the legal process and privacy interest of the affected individuals. Plaintiff has repeatedly misled the court in its representations supporting joinder of the Defendants and obtaining early discovery. CEG and the Declarant Nicolini's undisclosed financial interest in this litigation destroy any credibility of the Declaration and other factual support produced by Nicolini and CEG. Plaintiff's joinder of Defendants is improper because Plaintiff's claims do not arise out of the same transaction, occurrence, or series thereof, and it prejudices the Defendant while undermining judicial economy. Plaintiff's Subpoena should be quashed because Plaintiff misled this Court in obtaining an Order granting early discovery, seeks protected information, and violates the United States Constitution.

WHEREFORE, premises, considered, Does respectfully requests that this Court:

(a) Sever and dismiss all Defendants pursuant to Federal Rule of Civil Procedure 21 and require Plaintiff to bring individual actions against each Defendant, if it chooses to do so, in the appropriate venue;

(b) Quash the Subpoena pursuant to Federal Rule of Civil Procedure 26;

(c) Enter a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure, staying all discovery in this case (and the use of any information already obtained by the Plaintiffs in discovery) until such time as the interests of Does 1-84 can be heard and considered by a court of proper jurisdiction;

16