UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **COMBAT ZONE, INC.,** *Plaintiff,* v. **DOES 1 – 84**, *Defendants.* | Civil Action No.: 3:12-cv-30085 **Opposition to Doe's Motion to Quash or Modify Subpoena** |

Plaintiff hereby opposes the Doe's Motion to Quash or Modify Subpoena. For reasons stated below, Plaintiff respectfully requests that the Court deny Doe's Motion, or strike the Motion from the docket.

**1. Pro se litigants may not be anonymous.**

As a general rule, parties should not be able to litigate their disputes anonymously – court should deny or strike Doe's motion. Rule 11(a) dictates that

> [e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. The paper must state the *signer's address, e-mail address, and telephone number*. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court *must strike* an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

Fed. R. Civ. P.(emphasis added); *accord John Wiley & Sons, Inc. v. John Does Nos. 1-27*, 2012 U.S. Dist. LEXIS 13667, at *1-2 (S.D.N.Y. Feb. 3, 2012).

Similarly, Federal Rule of Civil Procedure 17(a) mandates that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). These rules serve the vital purpose of facilitating pubic scrutiny of judicial proceedings, and as such,

they "cannot be set aside lightly." *John Wiley & Sons*, 2012 U.S. Dist. LEXIS 13667, at *2 (quoting *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008)).

The presumption is that all judicial proceedings remain open to the public. *Craig v. Harney*, 331 U.S. 367, 67 S. Ct. 1249, 91 L. Ed. 1546 (1947) (holding "[w]hat transpires in a courtroom is public property"); *see generally Richmond Newspapers v. Va.*, 448 U.S. 555, 589 - 594 (U.S. 1980). And while the Supreme Court has not specified detailed when parties may proceed anonymously, there is a test providing an exception to the general presumption, and it has been favored by courts in this district and circuit.

> The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.' It is the exceptional case in which a plaintiff may proceed under a fictitious name.

*Doe v. University of Rhode Island*, 1993 U.S. Dist. LEXIS 19257, 1993 WL 667341 (D.R.I.), citing *Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992); *see, e.g., Doe v. Bell Atl. Business Sys. Servs.*, 162 F.R.D. 418, 420 (D. Mass. 1995); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981); *see generally Guerilla Girls, Inc. v. Kaz*, 224 F.R.D. 571, 573 (S.D.N.Y. 2004) ("When evaluating a request by a party to proceed anonymously or by pseudonym courts consider numerous factors, including whether identification would put the affected party at risk of suffering physical or mental injury." (quoting *EW v. N.Y. BloodCtr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003)); *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 467-468 (E.D. Pa. 1997) (Listing six factors which support the use of pseudonymous litigation and three factors which militate against the use of pseudonymous litigation)

Here, the matter is moot, Doe has *not* made a motion to proceed anonymously. Rather the Doe has unilaterally withheld his identifying information without permission of the Court. If a motion to proceed anonymously had been granted by this Court, then and only then should the Doe be able submit his motion in the fashion he has already done.

If the Court does not agree that a motion to proceed anonymously is necessary before filing an anonymous motion or that Court reads Does original motion in a way like that of a motion to proceed anonymously, Doe still cannot proceed anonymously. Doe has *not* proffered an adequate reason why he should be afforded permission to proceed anonymously.

Doe claims he should be able to proceed anonymously on the grounds of the fears of overly aggressive retaliation by Plaintiff. However, this allegation is unsupported by motion papers. It is purely speculative, and not grounds for allowing the moving defendant to proceed anonymously. *See Liberty Media Holdings v. Swarm*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 17.

Doe also likely withheld his identifying information on the basis of embarrassment. But, the concern of embarrassment "is not, in itself, grounds for proceeding under a pseudonym." *Doe v. Bell Atl. Business Sys. Servs.*, 162 F.R.D. 418, 422 (D. Mass. 1995); *see Liberty Media Holdings v. Swarm*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 18 ("The potential embarrassment to Does [. . .] of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously."); *see also id*. at 42 ("Economic harm or mere embarrassment are not sufficient to override the strong public interest in disclosure").[1] Also, The First Circuit has stated that "[o]nly the most compelling reasons can justify the non-disclosure of judicial records." *Poliquin v. Garden Way, Inc.*,

---

[1] *Cf. Doe v. Word of Life Fellowship*, 2011 U.S. Dist. LEXIS 78383 (D. Mass. July 18, 2011) (Where a motion to proceed anonymously was denied for a Deacon of a church whom was accused of sexually molesting a minor. The Deacon claimed that anonymity is necessary to protect the privacy interests of himself and his family, as the case involves intimate sexual relations. The Deacon also claimed that the disclosure of his identity would have "serious impact" on his and his family's life.); *see also Doe v. Smith*, 189 F.R.D. 239, 245 (E.D.N.Y.1998)); *MacInnis v. Cigna Group Ins. Co. of Am.*, 379 F.Supp.2d 89, 90 (D.Mass. 2005) (citing *Doe v. Indiana Black Expo, Inc.*, 923 F.Supp. 137, 140 (S.D.Ind. 1996)).

989 F.2d 527, 533 (1st Cir. 1988) (citing *FTC v. Standard Financial Management Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)); *see also Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 10 (1st Cir. 1998) ("The mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access").

Further, it is impossible for any party or for the Court and Plaintiff to communicate with the movant, in this action. A party should not be able litigate an action under such circumstances. Accordingly, since defendant has failed to identify any legal ground for shielding [his/her] identify from disclosure, the Motion to Quash or Modify Subpoena should be denied and stricken.

**2. Doe lacks standing to challenge subpoena.**

Doe lacks standing to challenge subpoena to third parties. See Fed. R. Civ. P. 45(c)(3)(B); *Liberty Media Holdings v. Swarm*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011); *United States Bank Nat'l Ass'n v. James*, 264 F.R.D. 17, 18-19 (D. Me. 2010) ("The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." (citing *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997))); *Armor Screen Corp. v. Storm Catcher, Inc.*, 2008 WL 5049277, at *2 (S.D. Fla. Nov. 25, 2008). As a Court in this district noted in *Liberty Media Holdings*, a party has no standing to challenge a subpoena issued to third parties unless it could assert some privilege to the requested document. *See* 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), 13 n. 3 (noting that defendants could not viably assert privacy interest in subscriber information as they are already disclosed to the ISPs).

Therefore, Doe's Motion fails due to lack of standing.

**3. There is no exception or waiver that applies to quash subpoena.**

As is relevant here, Rule 45(c)(3)(iii) provides that a court may quash a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed.R.Civ.P. 45(c)(3)(iii). Pursuant to Rule 45(d)(2), when subpoenaed information is withheld based on a claim of privilege, the claim of privilege must "describe the nature of the withheld [information] in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed.R.Civ.P. 45(d)(2).

Assuming *arguendo* that Doe has standing, an exception for claims of privilege does not apply here, as the moving defendant did not viably assert any claim of privilege relating to the requested information. Importantly, Internet subscribers do not have a proprietary interest or an expectation of privacy in their subscriber information because they have already conveyed such information to their Internet Service Providers ("ISPs"). Yet, courts have held that Internet subscribers do not have an expectation of privacy in their subscriber information - including names, addresses, phone numbers, and e-mail address - as they already have conveyed such information to their ISPs. *See e.g.*, *Liberty Media Holdings*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011); *United States v. Simons,* 206 F.3d 392 (4th Cir., 2000); *Guest v. Leis*, 255 F.3d 325, 335-36 (6th Cir.2001) ("Individuals generally lose a reasonable expectation of privacy in their information once they reveal it to third parties."); *U.S. v. Hambrick*, Civ. No. 99-4793, 2000 WL 1062039, at *4 (4th Cir. Aug. 3, 2000) (a person does not have a privacy interest in the account information given to the ISP in order to establish an email account); *First Time Videos, LLC v. Does 1-500*, No. 10 C 6254, 2011 WL 3498227, at *5 (N.D. Ill. Aug. 9, 2011) ("[i]nternet subscribers do not have a reasonable expectation of privacy in their subscriber information - including

name, address, phone number, and email address - as they have already conveyed such information to theirs ISPs."); *Third Degree Films, Inc. v. Does 1 - 2010*, Civil No. 4:11 MC 2, 2011 WL 4759283, at *3 (N.D. Ind. Oct. 6, 2011) (citing *First Time Videos*, 2011 WL 3498227, at *4) (holding that because "[i]nternet subscribers share their information to set up their internet accounts," the subscribers "cannot proceed to assert a privacy interest over the same information they chose to disclose."); *U.S. v. Kennedy*, 81 F.Supp.2d 1103, 1110 (D.Kan.2000) (defendant's Fourth Amendment rights were not violated when an ISP turned over his subscriber information, as there is no expectation of privacy in information provided to third parties); *Achte/Neunte Boll Kino Beteiligungs GmbH & Co. KG v. Doe*, 736 F. Supp. 2d 212 (D.D.C. 2010) (collecting cases, including U.*S. v. Kennedy*, Civ. No. 99-4793, 2000 WL 1062039, at *4 (4th Cir. Aug. 3, 2000)).

The only information sought through the Subpoena at issue is the Doe defendants' contact information. This information has already been shared by the Doe with his respective ISP. Thus, in lieu of *supra* and *infra*, there is no expectation of privacy nor exception that applies to quash subpoena.

Further, Doe exposed his IP address to the public by sharing the Motion Picture at issue. The torrent software exposes the IP address of the infringer, as explained in the Compl. and the Decl. of Jon Nicolini.

Therefore, assuming *arguendo* Doe has standing, his Motion fails because it does not provide sufficient facts regarding subpoenaed information being privileged or otherwise protected matter, and does not provide an exception or waiver that would apply to satisfy Rule 45(c)(3)(iii).

**4. The IP address is relevant to the infringer's identity.**

The allegation is the somewhat familiar refrain that the IP address alone is insufficient

6

identify the actual infringer, as it only identifies the account holder or subscriber of that IP address.

It is true that Plaintiff only knows the IP address where the infringement occurred and the sought subscriber information will only reveal the identity of the subscriber of that IP address. The inference drawn from that information, however, i.e. – that the subscriber of the IP address is the one who downloaded the infringing material, is not in bad faith. In fact, the same type of inference was drawn by the Fifth Circuit in upholding probable cause for a search warrant. *See United States v. Perez*, 484 F.3d 735, 740 & fn. 2 (5th Cir. 2007). In *Perez*, law enforcement obtained a search warrant based on affidavit that there was child pornography transmitted to a particular IP address and that IP address was assigned to the defendant. *See id.* at 740. Defendant in *Perez* argued "that the association of an IP address with a physical address does not give rise to probable cause to search that address." *Id.* The *Perez* Defendant went on to argue "that if he 'used an unsecure wireless connection, then neighbors would have been able to easily use [Perez's] internet access to make the transmissions.'" *Id.* Fifth Circuit rejected the argument, holding that "though it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was inside that residence." *See id.* Fifth Circuit went on to hold that there was a fair probability that the owner of the IP address was responsible for the download.  *See* 484 F.3d at 740 & n. 2 (citing *United States v. Grant*, 218 F.3d 72, 73 (1st Cir. 2000)). It is not bad faith to infer, especially in this early stage of litigation, that owner of the IP address was the person responsible for downloads occurring at that IP address. *See Perez*, 484 F.3d at 740 & n. 2.

The issue is not whether infringement stemming from an IP address alone gives Plaintiff proof beyond doubt, but whether it gives Plaintiff a good faith basis to believe that the owner of the IP address committed the infringement.  As the *Perez* Court held,

7

evidence of download at an IP address is sufficient evidence to support the suspicion against the owner of that IP address. *See id*; *see also United States v. Vosburgh*, 602 F.3d 512 (3d Cir. Pa. 2010) ("We agree with the reasoning in Perez. As many courts have recognized, IP addresses are *fairly* "unique" identifiers. *See, e.g.*, *United States v. Forrester*, 512 F.3d 500, 510 n.5 (9th Cir. 2008) (stating that "every computer or server connected to the Internet has a unique IP address"); *Perrine*, 518 F.3d at 1199 n.2 (noting that an IP address "is unique to a specific computer"); *Peterson v. Nat'l Telecomm. & Inform. Admin.*, 478 F.3d 626, 629 (4th Cir. 2007) (explaining that "[e]ach computer connected to the Internet is assigned a unique numerical [IP] address"); *White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 370 n.6 (5th Cir. 2005) (describing an IP address as "a unique 32-bit numeric address" that essentially "identifies a single computer")) (emphasis added: *fairly*).

**5. Motion to sever should be denied because there is proper joinder.**

Doe raises issue of joinder as part of its argument for motion to quash[2] and also moves in the alternative to sever. For reasons stated below, joinder is proper and Doe's motion to sever should be denied.

**5.1. Requirements of Rule 20 have been satisfied.**

Permissive joinder is governed by Federal Rule of Civil Procedure 20, which provides that:

---

[2] As the court noted in *Liberty Media Holdings, LLC*, issue of joinder is irrelevant to motion to quash. 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), n. 5.

> "Persons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, *or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences*; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2) (emphasis added). Many courts have determined that all "logically related" events underlying a legal cause of action are generally considered as comprising a transaction or occurrence. *See Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). The Court may sever improperly joined parties at any time. However, "the impulse is toward the broadest possible scope of action consistent with fairness to the parties and joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). As one of the drafters of the Federal Rules of Civil Procedure, Professor and Judge Charles E. Clark, noted, "if there is any reason why bringing in another party or another claim might get matters settled faster, or more justly, then join them." 5 Charles A. Wright, *Joinder of Claims and Parties Under Modern Pleading Rules*, 36 Minn. L. Rev. 580, 632 (1952); *see also* James Wm. Moore et al., *Moore's Federal Practice*, § 20.02[1][a] (3d ed.) ("[J]oinder is based not on arcane historic formulations of legal relationships, but on common sense, fact-based considerations. . . . Many federal joinder rules permit addition of claims or parties based on transactional relatedness."); 6A Charles Alan Wright et al., *Federal Practice & Procedure: Civil 2d* § 1652 (1990) ("Like the compulsory counterclaim rule, the goal of the permissive joinder of parties rule–also centered on the 'transaction or occurrence'–is to prevent multiple lawsuits."); Robert G. Bone, *Mapping the Boundaries of a Dispute: Conceptions of Ideal Lawsuit Structure from the Field Code to the Federal Rules*, 89 Colum. L. Rev. 1, 80 (1989) ("The federal rules drafters . . . defined party structure primarily in terms of trial convenience, not in terms of right, and relied to a large extent on trial judge discretion to

shape optimal lawsuit structure for each dispute.").

There is little question that there is a common question of law or fact among the defendant in this action. *See Complaint* ¶¶ 5-14. Plaintiff alleges that each defendant illegally used BitTorrent protocol to illegally upload and download Plaintiff's copyrighted work. *See id.* Plaintiff also alleges that each defendant's action constituted violation of copyright laws. *See id.* In fact, it appears that even Doe does not contest the existence of common question of law or fact. *See Doe's Mot.* (focusing on transaction prong of the permissive joinder rule, efficient case management, and alleging fraudulent joinder).

The issue of joinder next turns to whether this case arises out of "same transaction, occurrence, or series of transactions or occurrences" Fed. R. Civ. P. 20(a)(2)(A). "This essentially requires claims asserted against joined parties to be 'logically related.'" *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F.Supp.2d 332, 342 (D.D.C. 2011) (citing *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004); *see also Mosley v. Gen. Motors Corp.*, 497 F.2d at 1333. Furthermore, Supreme Court has "held that 'transaction is a word of flexible meaning which may comprehend a series of occurrences if they have logical connection." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 (1974) (citing *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926)).

Here, Plaintiff alleged that defendants have entered the exact same swarm over a period of three months and reproduced and distributed Plaintiff's copyrighted work using the exact same file as identified by the hash mark of the reproduced and distributed files. *See Complaint* ¶¶ 1-14. Doe argues that Plaintiff's allegations are insufficient to constitute series of related occurrences because Plaintiff cannot assert that defendants actually transferred pieces of the copyrighted work with each other, only that probability suggests that such is the case. *See Doe's Mot.*

Doe's argument completely disregards the nature of BitTorrent protocol. As stated in

paragraph 5 of the Complaint, the infringing activities of the doe defendants are logically related because:

> All Defendants identified in Exhibit A (i) have traded exactly the same file of the copyrighted work as shown by the identical hash mark; (ii) have traded (simultaneously uploaded and downloaded) the exact same file as is the nature of torrent software; and (iii) the alleged events occurred within a limited period of time.

*Complaint* ¶ 5; *see also Liberty Media Holdings, LLC*, U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 18 (holding that allegation of BitTorrent as a collective enterprise satisfies "same transaction or occurrence" requirement); *Voltage Pictures, LLC v. Does 1-5000*, 2011 U.S. Dist. LEXIS 50787, at *35-*39 (D.D.C. May 12, 2011) (distinguishing BitTorrent protocol from traditional peer to peer network); *Call of the Wild Movie, LLC*, 770 F.Supp.2d at 343 (holding that defendants using BitTorrent protocol were logically related and properly joined). *Digital Sin*, 2012 U.S. Dist. LEXIS 10803, 15 (S.D.N.Y. Jan. 30, 2012) (Court declining to sever the case at stage of litigation when discovery is underway to learn identifying facts necessary to permit service upon Doe defendants, "it is difficult to see how the sharing and downloading activity alleged in the Complaint – a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file – could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).") (emphasis added); *accord DigiProtect USA Corp. v. Does 1-240*, 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011).[3]

---

[3] Several courts — including a court in this district — have found joinder to be appropriate. *See, e.g., Raw Films, Ltd. v. Does 1-15*, No. 11- 7248, 2012 U.S. Dist. LEXIS 41645, 2012 WL 1019067, at *3-5 (E.D.Pa. Mar. 26, 2012); *Third Degree Films v. Does 1-108*, No. DKC 11-3007, 2012 U.S. Dist. LEXIS 25400, 2012 WL 669055, at *4-5 (D.Md. Feb. 28, 2012); *Patrick Collins, Inc. v. Does 1-15*, No. 11-cv-02164-CMA-MJW, 2012 U.S. Dist. LEXIS 15938, 2012 WL 415436, at *2-4 (D.Colo. Feb. 8, 2012); *Digital Sin, Inc. v. Does 1-176*, No. 12-CV-00126 (AJN), 2012 U.S. Dist. LEXIS 10803, 2012 WL

In determining whether the actions of doe defendants in a same swarm are logically related, the Court should look at the nature of the swarm. As the excerpt from BitTorrent, Inc.'s own website succinctly states, BitTorrent protocol's mentality is that of "Give and ye shall receive!" *See Declaration of John Nicolini*. Every participant of the swarm downloading the movie presumably acts with the same motivation: to obtain a free copy of the copyrighted work. Every participant also understands that in order to make the BitTorrent system work and to have it be viable as a file sharing mechanism where free copies of various copyrighted works are available, they must do unto others as they would have others do to them, i.e. – redistribute copies of the movies they have downloaded. Even if there is not an actual exchange of files between initial participants of the swarm and later participants, they all commit the same infringing activity: they illegally download and then redistribute that download to others. This is done with the purpose of keeping the swarm alive, so that copies of copyrighted works continue to be available for free downloads.

Decentralized nature of BitTorrent protocol and vested interest of each member of the swarm in contributing in a concerted effort to illegally reproduce and distribute copyrighted work creates the logical relationship between the series of activities by the members of the swarm and these doe defendants. Coupled with Supreme Court's strong

---

263491, at *5 (S.D.N.Y. Jan. 30, 2012); *Third Degree Films, Inc. v. Does 1-118*, No. 11-cv-03006-AW, 2011 U.S. Dist. LEXIS 148676, 2011 WL 6837774, at *1-3 (D.Md. Dec. 28, 2011); K-*Beech, Inc. v. Does 1-57*, No. 2:11-cv-358-FtM-36SPC, 2011 U.S. Dist. LEXIS 132834, 2011 WL 5597303, at *6 (M.D.Fla. Nov. 1, 2011), report and recommendation adopted by No. 2:11-CV- 00358-FtM-36SPC, 2011 U.S. Dist. LEXIS 132829, 2011 WL 5597293 (M.D.Fla. Nov. 17, 2011); *Liberty Media Holdings, LLC, v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7B5BC9C05*, 821 F. Supp. 2d 444 (D.Mass. 2011); *Hard Drive Prods., Inc. v. Does 1-55*, No. 11 C 2798, 2011 U.S. Dist. LEXIS 118049, 2011 WL 4889094, at *5 (N.D.Ill. Oct. 12, 2011); *OpenMind Solutions, Inc. v. Does 1-39*, No. C 11-3311 MEJ, 2011 U.S. Dist. LEXIS 116552, 2011 WL 4715200, at *6-8 (N.D.Cal. Oct. 7, 2011); *W. Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 15-16 (D.D.C. 2011)*; Liberty Media Holdings, LLC v. Does 1-62*, No. 11cv 575 MMA (NLS), 2011 U.S. Dist. LEXIS 51526, 2011 WL 1869923, at *5 (S.D.Cal. May 12, 2011).

encouragement of permissive joinder, *United Mine Workers of Am.*, 383 U.S. at 724, the concerted actions of these doe defendants constitute logically related series of transactions. *See also Liberty Media Holdings, LLC*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 17-21.

### 5.2. Joinder would promote judicial economy.

Contrary to Doe's assertions, joinder, at this stage of the proceedings, promotes judicial economy. During the early stages of these types of copyright enforcement cases, the substantive issues to be dealt with are motions for early discovery, motions to quash, and motions to sever. These motions raise substantially the same issue for all these doe defendants. In fact, sometimes doe defendants file exactly the same motions using templates. It is obvious that judicial economy is served by consolidating these cases as much as possible so that the Court does not have to rehear the same motions over and over again. *Cf. In re Adult Film Copyright Infringement Litigation*, 1:11-cv-07564 (S.D.N.Y. Mar. 13, 2012) (consolidating various copyright infringement cases together for discovery and other pre-trial purposes because actions involve common questions of law and fact).

In essence, Doe argues that joinder creates more management problems than it promotes efficiency because each Defendant may have different factual and legal defenses that the Court would have to resolve within the context of one case. Doe's approach to joinder is too inflexible and narrow.  Joinder is not an all or nothing proposition throughout the litigation.  As long as joinder promotes judicial economy, as it does during early stages of litigation, it makes sense to maintain joinder of the doe defendants. Once individual doe defendants are named and bring forth various factual and legal defenses, judicial economy will be further served by grouping like-defenses together. Some defendants may pursue purely legal defenses and surely it would make sense to group

defendants pursuing the same legal claim to promote economy and consistency. Even if every single named defendants end up pursuing different defenses and severance is required for all defendants, joinder during early stages of litigation promotes judicial economy over severing all defendants from the very beginning.

Also counseling in favor of joinder is the "interest of convenience" and "just, speedy, and inexpensive determination of the action." *See Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007). Severance in these types of copyright cases would become "significant obstacles in [Plaintiff's] efforts to protect [its] copyrights from illegal file-sharers and this would only needlessly delay [Plaintiff's] cases." *Call of the Wild Movie, LLC*, 770 F.Supp.2d at 344.  Plaintiff would be forced to file separate lawsuits, pay separate filing fees, and issue separate subpoenas to ISPs for each individual infringer, all of which would work as substantial obstacle in enforcement of Plaintiff's copyright and would not "be in the 'interest of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'" *Id.* (citing *Lane*, 2007 WL 2007493, at *7). Therefore, judicial economy favors maintaining joinder of these doe defendants until individual defendant's defenses become distinct enough to favor severance.

### 5.3. Joinder would not prejudice or harm the defendants.

Joinder also does not prejudice or harm the defendants. *See Call of the Wild Movie, LLC*, 770 F.Supp.2d at 344. "To the contrary, joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants." *Id.* (citing *London-Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d 153, 161 (D.Mass. 2008)). "Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised." *London-Sire*

14

*Records, Inc.*, 542 F.Supp.2d at 161.

Doe continues to rail against joinder, raising concerns of coercive settlement and alleging improper motives on the part of the Plaintiff.

As for the purely speculative assertion that joinder may coerce unjust settlement from innocent defendants, one must keep in mind Plaintiff's basis for the lawsuit. Plaintiff is suing owners of IP addresses from which infringing activities were found. After learning the identities of doe defendants, Plaintiff sends letters alerting them of Plaintiff's claims. When defendants settle after receiving these letters, a logical inference is that defendants are settling because they are guilty of copyright infringement and are now faced with evidence of their illegal activity. It is not as if Plaintiff plucked these defendants out of thin air. The complaint is based on evidence of infringement gathered by experts.[4]

**6. Settlement of cases is normal; and, Plaintiff intends to proceed with litigation with great respect to the Law and Courts.**

The allegation of bad faith is that Plaintiff is using this Court as nothing more than an inexpensive means to gain Doe's personal information to coerce payment.[5] Doe alleges

---

[4] Doe implies that the nature of the copyrighted work infringed may coerce defendants into settlement. First, contrary to Doe's assertion, it is unclear whether the nature of the infringed work would have any coercive settlement effect. It is not as if Plaintiff is seeking to brand the defendants with a scarlet letter (dubious effect of such letter would have in this day and age notwithstanding). Second, for the purposes of joinder analysis, even if being named as a defendant in a copyright infringement case involving pornographic film has coercive effect, such effect would not be lessened by being named as sole defendant in a lawsuit as opposed to being part of a class of defendants. If anything, the prospect of being a lone named defendant would be more attention getting.

[5] Plaintiff's counsel notes that Plaintiff is represented by various counsels across the country.  This particular case is being represented by Attorney Cable, based on evidence collected by Copyright Enforcement Group, LLC ("CEG"). Doe appears to lump all type of cases filed by Plaintiff and other similar Plaintiffs, regardless of the litigation conduct of Attorney Cable or other counsels working with CEG. Plaintiff's counsel does not deny that there are some law firms who engage in improper conduct such as grouping thousands of defendants across the country in a single suit or

that individual doe defendants in other similar cases have not yet been named and served.

In the case here, Plaintiff is proceeding and plans on continuing in these litigations in the following manner: (1) Evidence of infringement is gathered and then grouped by locality and time; (2) Lawsuit is filed and early discovery is sought to obtain identity of the IP address subscribers, i.e. – probable infringers (particular concern is the limited amount of time these account information is held by the ISPs. Too long a delay means evidence of IP address assignment may be lost forever); (3) Subscribers are notified of the subpoena and claim against them; (4) Some move to fight the subpoena, some concede liability and agree to settle, some explain why they are not the infringers, and some defendants even send notices of bankruptcy; (5) Plaintiff examines the various asserted defenses and determines their credibility and dismiss defendants who have credible explanations; (6) To those defendants who do not respond and defendants without credible explanations, Plaintiff will name and serve; (7) Defendants will likely put forth various defenses, many of which will overlap; (8) Once individual defendants are named and defenses are brought forth, judicial economy can be further served by grouping defendants with like-defenses.

Plaintiff also notes that low rate of actual litigation in copyright or intellectual property litigations are not unusual. *See Table C-4*. U.S. District Courts – Civil Cases Terminated, by Nature of Suit and Action Taken, During the 12-Month Period Ending June 30, 2011, available at *http://1.usa.gov/JbPvS4*, at 40. Page 40 of the table shows that *only* 1.8 percent of copyright cases reached trial. *Id.* Out of the 2,014 cases terminated, 629 terminated with no court actions and 1,112 cases terminated before pretrial. *Id.* That means 86.4 percent of those copyright cases ended prior to pretrial. *See id.* It is also noteworthy that low rate of litigation and pretrial termination are true for other intellectual property litigation, i.e. –

---

personally calling defendants with improper threats, but this counsel or other attorneys filing suit based on CEG evidence does not engage in such conduct. It is patently misleading and improper for Doe to attempt to brush everyone with the same stroke.

patent and trademark. *See id.* 82.2 percent of patent litigations ended before pretrial and only 3.2 percent reached trial. *See id.* 87.5 percent of trademark litigations ended before pretrial and only 1.3 percent reached trial. *See id.* It then follows that most attorneys engage in some form of settlement negotiations before trial.[6]

Importantly, Doe's accusation that Plaintiff is only seeking to use this litigation to coerce settlement is unfounded and based on speculation. *Cf. Liberty Media Holdings, LLC*, 2011 U.S. Dist. LEXIS 125512 (D. Mass. 2011), at 17 & n. 7 (holding that allegation that Liberty Media Holdings was seeking identity merely to coerce settlement was purely speculative and not grounds for proceeding anonymously). As explained above, Plaintiff has started the process of discovering defendants and will proceed against those defendants without credible explanations. The low rate of litigation and early termination is a fact common to copyright and intellectual property litigation. Therefore, Doe's allegations of bad faith against Plaintiff are false and unfounded.

**7. Plaintiff needs information to proceed.**

The case cannot proceed without identifying the defendant, and the defendant cannot be identified until the requested information is subpoenaed from the defendant's ISPs. As numerous prior courts have agreed, early discovery is the only way to gain the information necessary to move the case forward. *Se,e e.g., London-Sire Records, Inc. v. Doe 1*, 542

---

[6] In addition, FRCP 16 and virtually every set of local rules and every scheduling order require the parties to engage in some form of settlement negotiations. See FRCP 16(a)(5); FRCP 16(c)(2)(I); see, e.g., CR 16(a) (W.D.Wa.) ("Counsel should identify any appropriate ADR procedure, and suggest at what stage of the case it should be employed"). Also note that the Alternative Dispute Resolution Act of 1998, codified at 28 U.S.C. §651, authorized and required each United States district court to "devise and implement its own alternative dispute resolution program, by local rule . . ., to encourage and promote the use of alternative dispute resolution in its district." 28 U.S.C. §651(b). Congress found that ADR led to "greater satisfaction of the parties" and "greater efficiency in achieving settlements." Alternative Dispute Resolution Act of 1998 (Sec. 2).

F.Supp.2d at 179 (D. Mass. 2008) ("Without the names and address [of the John Doe defendants], the plaintiff cannot serve process and the litigation can never progress."); *Sony Music Enter. Inc. v. Does 1–40*, 326 F.Supp.2d at 566 (S.D.N.Y. 2004).

Plaintiff is aware of no alternative method of identifying the defendants other than by serving a subpoena on their ISPs. Thus, Plaintiff's only recourse is to serve a subpoena to the ISPs who have the required information.

## 8. Conclusion

Based on the above-stated reasons, Plaintiff respectfully requests this Court to deny or strike the Motion to Quash or Modify Subpoena submitted by Doe.

*           *           *

Respectfully submitted on July 11, 2012,

        FOR THE PLAINTIFF:

        */s/ Marvin Cable*
        Marvin Cable, Esq.
        BBO#: 680968
        LAW OFFICES OF MARVIN CABLE
        P.O. Box 1630
        Northampton, MA 01061
        P: +1 (413) 268-6500
        F: +1 (413) 268-6500
        E: law@marvincable.com

## CERTIFICATE OF SERVICE

    I hereby certify that on July 11, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

                                                               Marvin Cable, Esq.

**Table of Contents**

1. PRO SE LITIGANTS MAY NOT BE ANONYMOUS. ................................................................................ 1
2. DOE LACKS STANDING TO CHALLENGE SUBPOENA. ...................................................................... 4
3. THERE IS NO EXCEPTION OR WAIVER THAT APPLIES TO QUASH SUBPOENA. ....................... 5
4. THE IP ADDRESS IS RELEVANT TO THE INFRINGER'S IDENTITY. ............................................... 6
5. MOTION TO SEVER SHOULD BE DENIED BECAUSE THERE IS PROPER JOINDER. ................... 8
    5.1. REQUIREMENTS OF RULE 20 HAVE BEEN SATISFIED. ............................................................................ 8
    5.2. JOINDER WOULD PROMOTE JUDICIAL ECONOMY. ............................................................................... 13
    5.3. JOINDER WOULD NOT PREJUDICE OR HARM THE DEFENDANTS. ........................................................ 14
6. SETTLEMENT OF CASES IS NORMAL; AND, PLAINTIFF INTENDS TO PROCEED WITH LITIGATION WITH GREAT RESPECT TO THE LAW AND COURTS. ..................................................... 15
7. PLAINTIFF NEEDS INFORMATION TO PROCEED. ............................................................................ 17
8. CONCLUSION ............................................................................................................................................ 18